## No. 10,324.

### HANSON KELLY, RECEIVER, vs. DAVID DEVALL.

When two or more parties enter into a commutative contract containing mutual stipulations and covenants, neither one is relievable, through his fault, or misfortune, at the expense.

inconvenience of the others. The contract is a law between them and either may sue for a specific performance or the reparation of the loss occasioned by the non-performance of the others.

APPEAL from the Twenty-third District Court, Parish of West Baton Rouge.
  *Talbot, J.*

*Read & Goodale* and *Henry Denis* for Plaintiff and Appellee.

*Kernan & Laycock* for Defendant and Appellant:

I.

## PRESCRIPTION.

This action is on an account; the contract of pledge securing the account is an auxiliary obligation which is extinguished with the account by the prescription of three years. R. C. C., 3138.

A written agreement for the loan of money entered into before the loan is actually made, will not arrest the prescription of three years. Campbell vs. Nicholson, 3 Ann. 458.

A written acknowledgement is necessary to interrupt prescription on all accounts, whether open or stated. Act No. 78, of 1888, p. 86.

A conditional promise will not interrupt prescription—Pearson & Howe vs. Harper, 11 Ann. 184—nor will an acknowledgment, coupled with the claim that the debt has been compensated—N. O. & C. R. Co. vs. Harper, 11 Ann. 212—nor will an offer of compromise, though accompanied by acknowledgment of the justness of the debt. Lackey vs. McMurdo, 9 Ann. 15.

Where written acknowledgement is required, complete proof in writing must be made out; separate writings cannot be connected by parol. Lehman, Abraham & Co. vs. Mahier, 34 Ann. 320.

II.

## ON THE MERITS.

A factor makes himself responsible to his planter client for damages by his failure to make advances in accordance with his contract. Taylor vs. Prestidge, Graham & Co., 33 Ann. 41.

The measure of damages is the loss sustained and profits missed, limited to those within the contemplation of the parties, or reasonably supposed to have been, at the time of the contract. R. C. C. 1934.

Deficiency in yield of crops is a proper element of damage in a suit of this character. Lobdell vs. Parker, 3 L. 332; Goodloe vs. Rogers, 9 Ann. 273; Same vs. Same, 10 Ann. 631; Rugely vs. Goodloe, 7 Ann. 294.

Nothing but a "fortuitous event" (act of God) or irresistible force can excuse the violation of a contract and exempt the debtor from damages therefor. R. C. C. 1934,§§ 2 and 3.

III.

## DEFAULT.

Not necessary when there is an active breach of contract. R. C. C. 1932.

Contract, by its very nature, can be executed only within a limited time which has expired. R. C. C. 1933, § 1; 1 Pothier, p. 176, No. 147; 6 Toullier, p. 259, No. 251.

The obligor refuses to comply with his contract, except on material modification. Arthur & Co. vs. Dickson, 10 Ann. 116; N. O. & N. R. Co. vs. Ganalh & Co., 18 L. 513.

Obligor acknowledges his inability to comply. 9 R. 377.

Debtor is put in default by demand in writing or verbal requisitions in the presence of two witnesses. R. C. C. 1911, § 2.

The opinion of the Court was delivered by

WATKINS, J. As receiver of the late firm of Conger & Kelly, commission merchants and cotton factors, the plaintiff demands of the defendant $2758 90, with eight per cent per annum interest from the 24th of May, 1886, as the balance due for certain alleged advances made by said firm in 1884, in pursuance of a contract between them and the defendant, bearing date May 23d, 1884, and as will appear from their annexed account.

To this demand defendant tenders a plea of three years' prescription, and answers that said firm entered into a written agreement in which "they bound themselves to advance respondent money and supplies necessary to enable him to make a crop of sugar and molasses on his plantation   *   *   during the year 1884, in the sum of $6000; and that said sum was necessary to enable the respondent to make said crop."

He represents that, on the faith of these representations he placed in cultivation ninety acres of fertile land in cane, and made all needful and proper arrangements to cultivate the same, "That, long before said Conger & Kelly had advanced said sum, viz: on the 20th of June, 1884, the said Conger & Kelly, without cause, and in flagrant violation of their said contract, refused to continue said advances, or otherwise comply with their said contract, after having been put in default by demand made on them according to law. That, by reason of the failure of said Conger & Kelly to comply with their said contract he suffered great loss and damage," because of his being left without the means to comply with the contracts he had made with his plantation laborers, and to pay their wages; and, on that account, they abandoned his plantation and he was unable to cultivate said crop properly.

He further answers "that, with proper cultivation, said ninety acres of land would have yielded at least one hogshead of sugar, or eleven hundred pounds in weight, and one and one-half barrels of molasses per acre, during the year;" and that said sugar and molasses were worth, at market price, the sum of $80; but that, owing to the "want of proper cultivation," from the aforesaid cause, said land only yielded one-third of a hogshead of sugar and one-half barrel of molasses; and on account "of said deficiency in yield," he suffered a loss of sixty hogsheads of

sugar and ninety barrels of molasses, less the proportionate amount of cost in bearing off the same; which he estimates at $25 per hogshead, thus leaving a net loss of $3300, for which he claims judgment in reconvention with legal interest from January 1st, 1885.

On these issues the parties went to trial, and the court rendered a judgment overruling defendant's plea of perscription, rejecting his reconventional demand for damages, and awarding plaintiff judgment for $2306 32, with eight per cent interest from the 24th of May, 1884, from which the defendant prosecutes this appeal.

It appeas from the contract which was entered into on the 23d of May, 1884, that said firm agreed "to make advances to the said David Duvall during the year 1884, of sums of money and supplies, acceptances or endorsements, not to exceed $6000, for furnishing him * * with the supplies necessary to the said plantation, for the payment of the wages, and for the support of the laborers, and other persons employed thereon, and for procuring what is requisite and proper for carrying on the cultivation of said plantation, the production, gathering, taking off, and preservation of the crops grown thereon, and putting the same in a condition for market." In consideration of this agreement, the defendant promised to pay commissions and eight per cent per annum interest, and to ship to Conger & Kelly the crop of sugar and molasses produced; and he pledged said crop as a security therefor.

An inspection of the account current sued on discloses that the same was opened on the 18th of January, 1884, and that, at the date the contract was entered into, defendant was indebted to them in the sum of $1788 23, and it was increased to the sum of $2306 32, on the 20th of June, following, which is the date at which the account was closed. The correctness of this account is admitted by the defendant, while denying his liability therein. On the 24th of May, 1884, the defendant executed his promissory note for $1755 70 to the order of Conger & Kelly, and made it payable on the 12th of December after date. It contains a stipulation that it was secured by a pledge of the growing crop of sugar on the Orange Grove plantation. This note was evidently intended to liquidate the account just described as existing at that date, the amount of which. was covered by, and included in the contract of the day previous. In such case the open and running account kept between the parties represents the primary obligation; or is prima facie evidence of it, and the contract and note are only intended for its liquidation, to a limited extent, and for the purpose of negotiation. In this case, the note and contract refer to the same crop and account, and both are secured by the same pledge.

Under this state of facts, the note and the contract, while in the possession of the plaintiff, were collateral for the account, and had the effect of suspending prescription thereon, until they were themselves extinguished by prescription; and to neither is the prescription of three years applicable.

It is quite evident that this note was competent evidence, and that the judge *a quo* properly admitted it. Considering it in connection with other facts, it is equally evident that the plea of prescription was correctly overruled, and judgment rendered for plaintiff on his account.

The remaining question to consider is the defendant's reconventional demand.

The record discloses the following facts, viz: On the 6th of June, 1884, Conger & Kelly declined to make further *cash* advances to the defendant, or to honor *sight* drafts for any amount.

On this account defendant was unable to pay the *day laborers* whom he had employed to work the specified ninety acres of stubble-cane, for cash, and, on that account, they left him, and he was unable to supply their places with others. To serve as a temporary purpose defendant borrowed $500 from a friend, but that amount was wholly insufficient to enable him to tide over this embarrassment. On account of this loss of hoe-hands in the middle of the season, the weeds and tie-vines grew so rank and tall, that they could not be subdued by the force at his command, and they caused the cane to dry up, to a great extent. In consequence of which he sustained a loss of one-fourth to one-half a hogshead per acre. This is given as the opinion, not only of the defendant, but of his overseer and those of his neighbors, who are practical sugar planters, and speak advisedly.

There was no countervailing evidence adduced by the plaintiff.

We think it is quite clear that defendant has made out a case entitling him to damages.

The proof satisfactorily shows that he sustained a loss, through the immediate effect of the causes assigned, to the extent of one-fourth of a hogshead per acre, on the particular ninety acres specified, or, 22½ hogsheads; and that the market value of same, in 1884, was $80 approximately, hence, the value of same was $1800.

But there must be deducted therefrom the proportionate cost of bearing off and manufacturing the 22½ hogsheads, which may be fairly placed at $25 per hogshead, or $562 50.

The excuse offered for the plaintiff's declination and peremptory refusal to perform the plain provisions of his contract, and to discontinue cash advances to the defendant, within less than one month from its

date, and in the middle of June, is a weak, and wholly insufficient one, indeed.

Equity and fair-dealing require that the contract should be rigidly enforced, the defendant having been without fault or blame.

It is therefore, ordered and decreed that the judgment appealed from be amended by awarding the defendant on his reconventional demand the sum of $1800, with five per cent per annum interest from date of judicial demand, subject to a credit of $562 50, and that, as thus amended, the same be affirmed—the plaintiff and appellee paying costs of appeal.